SHARON SEERY
7521 W. 11TH STREET
GREELEY, COLORADO 80634
970-978-5111
REPRESENTING: PROPER PERSONA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

JACK HAWKS, D.O., INDIVIDUALLY and as spouse of Sara Hawks, SARA HAWKS INDIVIDUALLY, and as spouse of Jack Hawks D.O.,

    Plaintiffs,

Vs.

SHARON SEERY, JOHN AND JANE DOES I-V,

    Defendant.

Case No.: 2:21-CV-00092-DGC

DEFENDANTS RESPONSE TO "PLAINTIFF'S REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT"

    Defendant, **SHARON SEERY** representing herself in the above captioned matter, hereby responds to the allegations and claims of Plaintiffs Response to Plaintiff's Reply in Support of their Renewed Motion or Entry of Default Judgment as to the following:

**RESPONSE TO "RELEVANT PROCEDURAL BACKGROUND"**

    Defendant objects to Plaintiff's allegations to Defendants failure to file an answer. Defendant alleges she did not receive the documents from the server but in fact the documents were handed to a family member. Defendant works as a Caregiver and works away from home weeks at a time. Defendant came home and found the documents after working away from home at that time. Once the documents were found, an extensive period of time had passed to answer. Defendant attempted to find an attorney in Arizona to represent her but could not find one to represent her under the circumstances and living in Colorado.

    Since the service of Plaintiff's Summons and Complaint, **_Defendant has NOT received a single document from Plaintiff or the Court. Defendant had no knowledge of the activity of Plaintiff and the allegations with regard to default. Defendant will attest under oath she had not_**

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE LR Civ 5.4
(Rule Number/Section)

- 1

*received a single document. Defendant only became aware of the documents recently when she was given help in setting up a Pacer account and given guidance on how to use the system.* Defendant believes not giving notice is a flagrant violation of the rules and intentional. Defendant found several of Plaintiffs documents certifying service on the date of filing but Defendant never received any such documents. Defendant also noticed Court signed documents instructing Petitioner to serve copies of the documents on Defendant, no such document was received by any method.

## DEFENDANTS HISTORICAL, CONTEXTUAL AND SEQUENTIAL BACKGROUND STATEMENT OF EVENTS:

**For purposes of relative clarification, Defendant states as to the following:**

I began seeing Jack Hawks as my doctor in 2007. Approximately 6 months after seeing Dr. Hawks as his patient, the relationship turned into more of a personal relationship and continued until 2017. *It must be noted that in previous litigation, both Jack and Sara Hawks both lied to the Court that I had only been a patient since 2015. The truth is that I had been a patient of Dr. Hawks since 2007 when Dr. Hawks was associated with a Dr. Boles. From what was communicated and my present understanding according to Dr. Hawks, is that the notes and/or charts were lost in transferring them to a new computer system somehow. As I recall, Dr. Hawks stated he only medical records from 2015.*

I would see Dr. Hawks in his office after hours and later I discovered that the times he would want to see me, was when his wife was working. This continued for several years until approximately 2012 when I moved to Colorado. My family remained in Arizona so I would fly home regularly. We still continued to see each other not just as doctor/patient, but many times he wanted intercourse during office visits. While I was in Colorado we talked to each other almost every day.

In 2016, during one of my visits in Dr. Hawks office, he told me he was getting a divorce and then exposed his chest to show me his nipple piercings. We continued to see each other and in late 2016 he informed me that he was moving out of the home where he resided with his wife. During this entire period Dr. Hawks told me he was seeing a counselor to deal with some issues he had with his mother and with his children.

In early 2017, prior to Dr. Hawks fully moving out from living with his wife, he was involved in an auto accident with someone on a motorcycle and was found at fault. The accident occurred after he left the house where he lived with his wife on his way to see Sara (the co-plaintiff now known as Ms Hawks). I later discovered Sara had been living in a new house Dr. Hawks had just purchased. Dr. Hawks ended up being sued for a large amount of money as a result of the motorcycle accident.

When I had asked Dr. Hawks about Sara (kna Ms Hawks), he simply stated he was helping her out because she couldn't afford to pay rent where she had been living and he was just letting her stay there for a little while. I thought nothing more of it. I later discovered that Mr. Hawks did not tell the truth about Sara's living situation. I cannot recall exactly when it was that I found out, but Dr. Hawks did let me know that Sara was also a patient of his.

I believe it was late October, when Dr. Hawks told me he was going to Utah because his mother had fallen, or something to that effect, and she was dying. We continued our communications I believe until sometime in December of 2017. It was then I found out Dr. Hawks was not the wonderful person I had thought him to be. He had been seeing and being intimate with me and then going home to Sara.

I believe the last time we spoke, was in December of 2017 after his mother passed and other things that were going on in Dr. Hawks life between his now ex-wife and children stating that he checked himself into a psych ward because he said he was having thoughts of suicide.

In early 2018, I called honor health and filed a complaint. I was contacted by an investigator who was investigating Dr. Hawks for his inappropriate behavior with his female patients. I told the investigator all that had went on between Dr. Hawks and I.

During the medical board investigation and board hearing, I discovered there were 2 other women that had complained. During this time, I had conversations with his now ex-wife informing her of all that had happened between Jack Hawks and I. I apologized to her for all that I had done.

The Board investigator found that Dr. Hawks made inconsistent statements under oath during his investigation as stated in the medical board minutes. Through all of these events, I came to know one of the other women that had also complained. This same woman sued Dr. Hawks and prevailed in her case. There was one other woman involved in the investigation but did not appear to testify against him, she did however provide the investigator with all of the text messages between them.

During the medical board investigation, I had requested copies of the charts and notes that Dr. Hawks he had written and found that Dr. Hawks had inserted several lies and falsified information into my chart to cover his actions. This made it difficult for me to find a doctor here in Colorado. I did not seek any legal action because for one, I was dealing with my daughter who was having issues with a brain cyst that was causing her to have seizures. I just didn't have the money or the time to pursue these issues. To me, it was just better to walk away from all of it and concentrate on my life.

## THE RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT SHOULD NOT BE GRANTED.

1. Defendant argues there is no merit in Plaintiff's case. Plaintiff has taken bits and pieces of information and puzzled that information together to manipulate and give false impressions of the facts. For example: Defendant calls to the Court's attention Plaintiff's allegation that Defendant went to Plaintiffs home and left a letter. What Plaintiff is not saying is that both Plaintiff and Defendant would meet when Defendant came to visit her parents. Defendant and Plaintiff had just been together the previous day. The "letter", merely shows an extension of their previous conversation. Plaintiffs is attempting to classify the incident as some form of stalking or harassment.

2. Plaintiff is merely continuing his abuses by playing the victim after being cited and held accountable for his own abusive actions. Plaintiff's wife who is also a co-plaintiff is assisting the Plaintiff who has violated a position of trust and causing extensive damage. This is a concerted effort by Plaintiff and Plaintiff's wife who is also believed to be a victim/patient that has now become complicit with a scheme to use the legal system as a tool to further the damage he has already caused by manipulation, lying, and fraud. These are narcissistic tendencies. Plaintiff just refuses to be accountable for the pain he has caused and simply just cannot stop. He does not have it within him to simply move on and try to rebuild and change his behavior.

There have been several angry women Plaintiff has abused that did not report Plaintiff to the medical board. Defendant believes many of the post may be women who may be the source of post Plaintiff is alleging is the Defendant for the purpose preserving his complaint. An example of those is Plaintiffs ex-spouse who Plaintiff was cheating on while he abused the women and patients

from at least 2011 and their divorce. The abused women that reported Plaintiff to the medical board, there were three. Other women that were victims but decided, for any number of reasons, not to report Plaintiff to the board. Or any number of family members who were angered about abuses of their family. There are a number of possibilities. Plaintiffs spouse and Co-Plaintiff, states she has "collected several hundred pages of online postings..." by Defendant. The postings selected however, do no not give any indication of who made the postings. Defendant's postings were primarily about herself. It appears Plaintiff's spouse and Co-Plaintiff, scoured the internet for anything with Defendant's name and decided her husband and herself were being attacked and they were a "victim". Plaintiffs Co-Plaintiff, and wife, it appears did all of the searching to find what they possibly could use to attach to their allegations. In addition, Plaintiff cites information from a Google Plus account where Plaintiff made some postings. Google Plus no longer exist and was a social media platform that was private. The only people who could participate in her post were members that were connected to her private account.

3. Plaintiffs alleges: "<u>Defendant focuses on Dr. Hawks alleged conduct rather than addressing her own conduct and plaintiffs' claims and damages.</u>" Defendant's focus is on the truth and the root of the complaint. Plaintiff is attempting to deflect and bifurcate issues that are directly related to why this case exist in this court. The facts that exist are the very motive why Plaintiff continues his abuse using this case as a method. This case is about the abuse and pain he inflicted on several women that caused some of those women to file a complaint with the medical board. That board found him liable for many improper and illegal acts. Defendant is one of those people. Due to Plaintiff's own acts, his income has been reduced because of the restrictions the board has sanctioned Plaintiff with. There was much discussion by many people regarding the acts of Dr. Hawks. Plaintiff is alleging his income was reduced as a result of Defendant's postings and ratings. Plaintiff however, alleges the information is false and inaccurate. Taking a close look and asking relevant questions will reveal Plaintiffs attempt to con the Court. It is clear, once unveiled, that Plaintiff is targeting Defendant because of her vulnerability. On the basis of information and belief, Plaintiffs employment was terminated because he was no longer insurable. Although Plaintiff attempts to provide a personal affidavit of the manager Lisa Brinson of B Health, the affidavit is not credible. Defendant never called the office where Ms Brinson works and has idea who Ms Brinson is. His income has been reduced because he cannot work around women without a chaperone. That is the cause of Dr. Hawks problems, the problem is himself.

4. Plaintiffs alleges: "Defendant falsely denies online postings that were obviously and indisputably done by her." Plaintiff's makes several allegations and has provided "cookie cutter" references he suggest is evidence. However, Plaintiff does not present any evidence Defendant wrote any of the ratings although it is not understood how it would be inappropriate to give a doctor patient rating. Again, Dr. Hawks inflicted a lot of damage on a number of patients, a number of patients that may be responsible for the ratings Plaintiff is pointing to. The medical board has presented proof based on their investigation and the testimony of several patients of the damage Dr. Hawks inflicted. There is no evidence any of the Defendants comments affected Plaintiff's life, emotions, or income. On the contrary, Defendants comments reflect hurt, pain, and self-reflection, without naming anyone, intertwined in her poetry, poetry that was privately posted. Anyone interested in Defendant's commentary would have to actively search for the information and apply their own suggestions to its applicability and context. Plaintiff's evidence only suggest damage that he himself has inflicted on Defendant and others. Plaintiff has not argued that statements made by Defendant is false or inaccurate. In addition, most of the evidence Plaintiff is providing lacks any direct reference, any dates, or any context. Further, Plaintiff has presented no evidence Defendant created any fake profiles or accounts.

5. Plaintiffs alleges: "Defendant committed the actionable conduct on her Google+ account, YouTube account, and fake Linkedin accounts." Defendant reiterates her prior statements. Plaintiffs have provided no proof of their allegations. All that Plaintiffs have provided is various post most of which seems to point to themselves and their own acts. There are no time periods, names, statements, or context leading to the harassment of Plaintiff's. Plaintiff's spouse is unsurprisingly complicit with similar allegations loaded with assumptions and devoid of facts and/or proof. Most of Plaintiffs findings are commentary exchanges between women that had been abused at the hands of Dr. Hawks and discussions regarding the investigation. Plaintiffs spouse admits she collected the hundreds of pages of online postings that are described in this suit. She states *"I have collected several hundred pages of online postings by Sharon Seery that were described in the Complaint filed in this lawsuit and that were also described in my March 29, 2021 Declaration and in the March 29, 2021 Declaration signed by my husband, Jack Hawks, that was also submitted to the Court on March 29, 2021."* In brief, the statement by the wife of Jack Hawks appears to have drawn, collected, manufactured, alleged, and inferred her own set of facts regarding Jack Hawks without a complete personal understanding of background knowledge of

the case other than her own personal experiences as her husband's patient. Again, Plaintiffs are using a legal platform to further violate and abuse Defendant who has already been inflicted with extensive damage and abuse by Plaintiffs.

6. Plaintiffs alleges: "Defendant made direct communications and personal visits to plaintiffs." With regard to Plaintiff's reference to Defendants direct communications, it is not clear what the evidence Plaintiff is pointing to is intended to prove. Defendant states the only personal visit to Plaintiff was at the home of Dr. Hawks after a personal visit with him the day prior while visiting her parents in Arizona. There is no relevancy in the evidence with regard to Plaintiffs claims.

## CONCLUSION:

In conclusion, this case is simply about retaliation because Defendant revealed information to the medical board. The medical board conducted an investigation. The Board ordered Plaintiff to have a psycho-sexual evaluation. Plaintiff complied with taking that evaluation and the results were returned with recommendations that Plaintiff should have a female chaperone present when there is an exam with a female patient. The Board alleged Plaintiff had engaged in inappropriate sexual conduct with 3 females (that they were aware of). One allegation was that Plaintiff required a patient to engage in sexual relations with her for her to receive her medications. The Board Censured Plaintiff and in addition to the requirement to use a chaperone, he was required to enter treatment with a psychotherapist (that he alleges Defendant caused him to seek in the complaint) and submit quarterly progress reports. There were other requirements for compliance. It was required Plaintiff enter into a consent decree to the decision of the Board or have a hearing. Plaintiff chose the Consent Decree.

Another female was questioned about Plaintiffs contact with Plaintiff. That female was also a patient. That patient told the Board she was a former patient but did not start having a sexual relationship with Plaintiff until 6 months after she stopped being Plaintiffs patient. That patient is now the spouse of the Plaintiff and a Co-Plaintiff in this case. That Co-Plaintiff's basic allegations are the same or similar to Plaintiff against Defendant. Both Plaintiffs allege damages caused by Defendant in the form of: 1. Defamation 2. Public Disclosure of Private Facts 3. False Light Invasion of Privacy 4. Intrusion Upon Seclusion 5. Injurious Falsehood 6. Injunction Against Harassment. Plaintiffs have shown no evidence or connection with the evidence they have

the case other than her own personal experiences as her husband's patient. Again, Plaintiffs are using a legal platform to further violate and abuse Defendant who has already been inflicted with extensive damage and abuse by Plaintiffs.

6. Plaintiffs alleges: "Defendant made direct communications and personal visits to plaintiffs." With regard to Plaintiff's reference to Defendants direct communications, it is not clear what the evidence Plaintiff is pointing to is intended to prove. Defendant states the only personal visit to Plaintiff was at the home of Dr. Hawks after a personal visit with him the day prior while visiting her parents in Arizona. There is no relevancy in the evidence with regard to Plaintiffs claims.

## CONCLUSION:

In conclusion, this case is simply about retaliation because Defendant revealed information to the medical board. The medical board conducted an investigation. The Board ordered Plaintiff to have a psycho-sexual evaluation. Plaintiff complied with taking that evaluation and the results were returned with recommendations that Plaintiff should have a female chaperone present when there is an exam with a female patient. The Board alleged Plaintiff had engaged in inappropriate sexual conduct with 3 females (that they were aware of). One allegation was that Plaintiff required a patient to engage in sexual relations with her for her to receive her medications. The Board Censured Plaintiff and in addition to the requirement to use a chaperone, he was required to enter treatment with a psychotherapist (that he alleges Defendant caused him to seek in the complaint) and submit quarterly progress reports. There were other requirements for compliance. It was required Plaintiff enter into a consent decree to the decision of the Board or have a hearing. Plaintiff chose the Consent Decree.

Another female was questioned about Plaintiffs contact with Plaintiff. That female was also a patient. That patient told the Board she was a former patient but did not start having a sexual relationship with Plaintiff until 6 months after she stopped being Plaintiffs patient. That patient is now the spouse of the Plaintiff and a Co-Plaintiff in this case. That Co-Plaintiff's basic allegations are the same or similar to Plaintiff against Defendant. Both Plaintiffs allege damages caused by Defendant in the form of: 1. Defamation 2. Public Disclosure of Private Facts 3. False Light Invasion of Privacy 4. Intrusion Upon Seclusion 5. Injurious Falsehood 6. Injunction Against Harassment. Plaintiffs have shown no evidence or connection with the evidence they have

submitted affected Plaintiffs ratings, income, or mental stability. Plaintiffs have not shown any evidence of the alleged allegations. With regard to the letters sent by Lisa Brison, she has no credibility. Plaintiff is manufacturing evidence as quick as possible to keep from exposing the truth about this case. Defendant never called her office and has no idea who she is. It is clear she has no knowledge of who could have wrote or posted anything because there are no names that are identified in the postings. She makes a critical error with the dates of Plaintiff's separation in her attempt to manufacture the evidence. It is questionable why Plaintiffs official letter of separation was not included. See Doc 14-1 pg 2 and 3.

Finally, as previously stated, Defendant has not been served a single document filed with this Court other than the initial Summons and Complaint. That Defendant had no knowledge of any filed document (other than the Summons and Complaint) until she setup a Pacer account and reviewed what was filed. Further, Plaintiffs have not come in to this case with clean hands and have intentionally failed to proceed in compliance with Arizona procedures regarding service.

*Wherefore,* Plaintiffs still have not presented any creditable evidence that may lead to a finding that Plaintiff's suffered any form of harassment or damage. Plaintiff request that entry of default be denied and that Plaintiffs case be summarily dismissed.

Dated this 7 day of August 2021

/s/ Sharon Seery
Sharon Seery *In Pro Per*

1  A copy of the forgoing was
   Mailed/Delivered/Emailed
2  on this 7 day of August 2021 to:

3  Judge
   District Court of Arizona Phoenix District
4

5  David L. Selden, Esq.
   40 North Central Ave. 20th, floor
6  Phoenix, Arizona 85004
   Representing Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEFORE THE ARIZONA BOARD OF OSTEOPATHIC EXAMINERS

IN MEDICINE AND SURGERY

| | |
|---|---|
| IN THE MATTER OF: | CASE NO: DO-18-0007A and DO-18-0018A |
| JACK HAWKS, D.O.<br>Holder of License No. 4049 | INTERIM CONSENT AGREEMENT FOR A CHAPERONE |
| For the practice of osteopathic medicine in the State of Arizona | |

## INTERIM CONSENT AGREEMENT

By mutual agreement and understanding, between the Arizona Board of Osteopathic Examiners in Medicine and Surgery ("Board") and Jack Hawks, D.O. ("Respondent"), the parties agree to the following interim disposition of this matter.

1. Respondent has read and understands this Interim Consent Agreement and the Stipulated Interim Findings of Fact, Interim Conclusions of Law and Interim Order ("Interim Consent Agreement"). Respondent acknowledges that he has the right to consult with legal counsel regarding this matter and has done so.

2. By entering into this Interim Consent Agreement, Respondent voluntarily relinquishes any rights to a hearing or judicial review in state or federal court on the interim matters alleged, or to challenge this Interim Consent Agreement in its entirety as entered into with the Board, and waives any other cause of action related thereto or arising from said Interim Consent Agreement.

3. This Interim Consent Agreement is not effective until approved by the Board as evidenced by the signature of its Executive Director.

4. Respondent admits to the Interim Findings of Fact and Interim Conclusions of Law contained in the Interim Consent Agreement.

5. This Interim Consent Agreement, or any part thereof, may be considered in any future disciplinary action against Respondent.

1

6. This Interim Consent Agreement does not constitute a dismissal or resolution of this or other matters currently pending before the Board, if any, and does not constitute any waiver, express or implied, of the Board's statutory authority or jurisdiction.

7. All admissions made by Respondent are solely for interim disposition of this matter and any subsequent related administrative proceedings or civil litigation involving the Board and Respondent. Therefore, said admissions by Respondent are not intended or made for any other use, such as in the context of another state or federal government regulatory agency proceeding or civil or criminal court proceedings, in the State of Arizona or any other state or federal court. Respondent admits that the allegations recited in the Interim Findings of Fact have been alleged, but that is not an admission of the merit of the allegations.

8. Upon signing this agreement, and returning this document (or a copy thereof) to the Board's Executive Director, Respondent may not revoke the acceptance of the Interim Consent Agreement. Respondent may not make any modifications to the document. Any modifications to this original document are ineffective and void unless mutually approved by the parties.

9. This Interim Consent Agreement, once approved and signed, is a public record that will be publicly disseminated as a formal action of the Board and will be reported to the National Practitioner Data Bank and to the Board's website.

10. If any part of the Interim Consent Agreement is later declared void or otherwise unenforceable, the remainder of the Interim Consent Agreement in its entirety shall remain in force and effect.

11. If the Board does not adopt this Interim Consent Agreement, (1) Respondent will not assert as a defense that the Board's consideration of the Interim Consent Agreement constitutes bias, prejudice, prejudgment or other similar defense;

and (2) the Board will not consider the content of this Interim Consent Agreement as an admission by Respondent.

REVIEWED AND ACCEPTED THIS 26 DAY OF June, 2018.

*[signature]*

Jack Hawks, D.O.

### JURISDICTIONAL STATEMENT

12. The Board is empowered, pursuant to A.R.S. § 32-1800, *et seq.* to regulate the licensing and practice of osteopathic medicine in the State of Arizona.

13. Respondent holds license No. 4049 issued by the Board to practice as an osteopathic physician.

### INTERIM FINDINGS OF FACT

14. The Arizona Board of Osteopathic Examiners in Medicine and Surgery ("Board") initiated case nos. DO-18-0007A and DO-18-0018A against Jack Hawkes, D.O. ("Respondent"), after receiving information alleging that Respondent had inappropriate sexual relationships and/or engaged in inappropriate sexual conduct with three female patients.

15. Patient M.P. filed a complaint with the Board on January 19, 2018. Records obtained by Respondent's former employer document that patients S.S. and B.L. made complaints in January 2018, alleging that Respondent had consensual sexual relationships with them while they were his patients.

16. On February 12, 2018, the Interim Executive Director issued Dr. Hawks an Interim Order for a psycho-sexual evaluation. Dr. Hawks complied with that Order and on May 9, 2018, the Board received the results of that evaluation. Among other

3

recommendations, the evaluator recommended that Dr. Hawks have a female chaperone present at all times when he is present in an exam room with a female patient.

17. Until these matters can be adjudicated fully by the Board, the Executive Director enters into this Interim Consent Agreement with the Respondent.

## INTERIM CONCLUSIONS OF LAW

1. Pursuant to A.R.S. §32-1800, et seq. the Board has subject matter and personal jurisdiction in this matter. .

2. The conduct and circumstances described in paragraphs 1 through 5 above, if proven, constitute unprofessional conduct as defined in the following paragraphs of A.R.S. §32-1854 (6), (38), and (42).

## INTERIM ORDER

Pursuant to the authority vested in the Board's Executive Director,

**IT IS HEREBY ORDERED** that Jack Hawks, D.O., holder of osteopathic medical license number 4049, shall have a female chaperone (a medical assistant, nurse practitioner, scribe or other healthcare provider) present in the exam room at all times when Respondent is with a female patient. Respondent shall require the chaperone to maintain a log that denotes the name of each patient, date/time seen and a signature of the chaperone indicating the presence of the chaperone at all times Respondent is present in the exam room with a female patient. This log must be available for production to the Board at all times.

1. **Costs:** Respondent or the medical practice through which he practices shall bear all costs incurred regarding compliance with this Order.

2. **Obey All Laws:** Respondent shall obey all federal, state and local laws, and all rules governing the practice of medicine in the State of Arizona.

4

recommendations, the evaluator recommended that Dr. Hawks have a female chaperone present at all times when he is present in an exam room with a female patient.

17. Until these matters can be adjudicated fully by the Board, the Executive Director enters into this Interim Consent Agreement with the Respondent.

## INTERIM CONCLUSIONS OF LAW

1. Pursuant to A.R.S. §32-1800, et seq. the Board has subject matter and personal jurisdiction in this matter. .

2. The conduct and circumstances described in paragraphs 1 through 5 above, if proven, constitute unprofessional conduct as defined in the following paragraphs of A.R.S. §32-1854 (6), (38), and (42).

## INTERIM ORDER

Pursuant to the authority vested in the Board's Executive Director,

IT IS HEREBY ORDERED that Jack Hawks, D.O., holder of osteopathic medical license number 4049, shall have a female chaperone (a medical assistant, nurse practitioner, scribe or other healthcare provider) present in the exam room at all times when Respondent is with a female patient. Respondent shall require the chaperone to maintain a log that denotes the name of each patient, date/time seen and a signature of the chaperone indicating the presence of the chaperone at all times Respondent is present in the exam room with a female patient. This log must be available for production to the Board at all times.

1. **Costs:** Respondent or the medical practice through which he practices shall bear all costs incurred regarding compliance with this Order.

2. **Obey All Laws:** Respondent shall obey all federal, state and local laws, and all rules governing the practice of medicine in the State of Arizona.

4

3. **Ceasing Practice in the State of Arizona:** In the event that Respondent ceases to practice medicine in the State of Arizona, by moving out of state, failing to renew his license, or maintaining an Arizona license but ceasing to practice clinical medicine or administrative medicine requiring licensure, Respondent shall notify the Board that he has ceased practicing in Arizona, in writing, within 10 days of ceasing to practice. In its sole discretion, the Board may stay the terms of this Order until such time as the Respondent resumes the practice of medicine in Arizona, or may take other action to resolve the findings of fact and conclusions of law contained in this Order.

4. **Failure to Comply / Violation**: Respondent's failure to comply with the requirements of this Order shall constitute an allegation of unprofessional conduct as defined at A.R.S. § 32-1854(25) and proven violations may be grounds for further disciplinary action (e.g., suspension or revocation of license).



ISSUED THIS _10_ DAY OF JULY, 2018.
ARIZONA BOARD OF OSTEOPATHIC EXAMINERS
IN MEDICINE AND SURGERY

By: _____

Amber Brake, JD, MHA, FACHE, Executive Director

Original filed this _10_ day of July, 2018 with the:

Arizona Board of Osteopathic Examiners
In Medicine and Surgery
1740 W. Adams St.
Phoenix, AZ 85007

Copy of the foregoing sent via regular mail this _10_ day of July, 2018 to:

Jack Hawks, D.O.

Address of record

Copy of the foregoing sent via regular mail this
10 day of July, 2018 to:

Attorney
Address of record

Copy of the foregoing sent via regular mail
this 10 day of July, 2018 to:

Jeanne Galvin, AAG
Office of the Attorney General SGD/LES
2005 North Central Ave.
Phoenix AZ 85004

6

---------- Forwarded message ---------
From: **Kathy Hawks** <nelsonhawksinc@cs.com>
Date: Mon, Jan 7, 2019, 9:52 PM
Subject: KATHY HAWKS
To: <neal@bpsadvancedwellness.com>

*From ex-wife*

Hi Dr Kennington,

Happy New Year! I hope this email finds you well.

I'm writing prior to making an appointment to give you some background of the past events. Basically, since the divorce was final, Jack hasn't followed through with any of the stipulations of the decree, to include being behind on his child support and most concerning, he's now luring the kids to live with him. Hunter moved in with him last week. He bought Skyler a car for Christmas and he's really laying on the charm with her, taking her out places, and whatever.

I have never kept the kids from him, but this is starting to concern me greatly, because I know he's been so dishonest with everyone (including them!)

We agreed in the decree to have a specialist talk with Skyler and make recommendations for visitation. His name is Dr. David Lull. Skyler has arranged all of the appointments. Jack met with Dr. Lull, as an individual and eventually with Skyler to repair the damage he has caused her and the family. I have left message with his office but he has not returned my calls. At some point I will need to meet with Dr Lull myself. I have my suspicions that Jack has not been forthcoming on his past and

suspicions that Jack has not been forthcoming on his past and present behaviors.

To me, Jack is a liar, master manipulator and a sexual predator. Jack is behind on his child and spousal support to the tune of $15,000 and climbing. I think he's trying to woo Skyler into living with him.
I am concerned about Skyler's physical and mental well-being. I would like to talk with you since you have already have a history with the both of us. You saw how Jack was and you know me and my 'directness'. I was hoping you could give me some guidance on how to approach Dr. Lull. I am not doing this out of spite nor am I making false allegations against Jack. Attached are the board complaints Jack has against him.

I am concerned for Skyler (and actually for Hunter too), but I know there is nothing I can do for Hunter since he is 19.

I appreciate any input you could give me when I come in. I hope this was helpful information so you can help me with this daunting task!

I look forward to seeing you again,

Kathy Hawks

STE 3
PHOENIX AZ 85022-5306

**Progress Notes by Jack Jessen Hawks, DO at 07/30/17 1645 (continued)**

Review of Systems
Constitutional: Positive for fatigue. Negative for activity change, appetite change and unexpected weight change.
Respiratory: Negative. Negative for cough, chest tightness and wheezing.
Cardiovascular: Negative. Negative for chest pain and palpitations.
Endocrine: Negative for polydipsia and polyphagia.
Genitourinary: Negative.
Musculoskeletal: Positive for myalgias, back pain and arthralgias. Negative for joint swelling.
Neurological: Positive for dizziness, weakness and headaches. Negative for light-headedness.
Psychiatric/Behavioral: Positive for hallucinations, behavioral problems, sleep disturbance and dysphoric mood. Negative for suicidal ideas and self-injury. The patient is nervous/anxious.
All other systems reviewed and are negative.

*Handwritten note:* In July of 2017 Jack Hawks Admitted to Sexual contact with me yet States in my Chart that I was positive for Hallucinations and behavioral Prombems in July of 2017

M **My Big Jerk Back**
+1 623-910-7586

*This is one of the #1 sex text to me from*

warrants an answer u say it must be true

5:28 PM

There is a part of me that wishes u would have played it differently, but in my mind it was a fantasy/greatest secret....

5:49 PM

Like the glasses!! I won't quit...

6:30 PM

It is what it is....I wanna help fix ur eyes!!

6:58 PM

Aug 26, 2017

No, planning on coming to chandler

8:21 PM