**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jack Hawks, D.O., and Sara Hawks, | No. CV-21-00092-PHX-DGC |
| Plaintiffs/Counterdefendants, | **ORDER** |
| v. | |
| Sharon Seery, | |
| Defendant/Counterclaimant. | |

Plaintiffs Jack Hawks, D.O. ("Dr. Hawks") and his wife Sara ("Mrs. Hawks") assert defamation and related claims against Defendant Sharon Seery, who asserts a counterclaim for retaliation. Docs. 1, 15. The parties have filed motions for summary judgment. Docs. 48, 57. The motions are fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, Defendant's motion will be denied and Plaintiffs' motion will be granted in part and denied in part.

## I. Background.

Plaintiffs are residents of Arizona. Docs. 1, 15 ¶¶ 1. Defendant is a former patient of Dr. Hawks. Docs. 1 ¶ 8, 15 ¶ 6. In January 2018, Defendant reported to Honor Health, an Arizona healthcare provider and Dr. Hawks' employer, that she had a consensual sexual relationship with Dr. Hawks while she was his patient. Doc. 48 at 2, 13, 22, 33. Honor Health informed the Arizona Board of Osteopathic Examiners (the "Board"). *Id.* at 32-33.

Dr. Hawks and Defendant testified before the Board on August 11, 2018. *Id.* at 22-23. Defendant stated that she had a doctor-patient relationship with Dr. Hawks in 2007 and the relationship turned sexual after six months. *Id.* at 23. Defendant further stated that she stopped having sexual relations with Dr. Hawks in July 2017. *Id.* Dr. Hawks testified that he had sexual contact with Defendant in July 2017, but only one time. *Id.*

On December 9, 2019, the Board found that Dr. Hawks had engaged in inappropriate sexual contact with Defendant. *Id.* at 33, 36; Doc. 60 at 6-7. The Board placed his medical license on probation for seven years with various restrictions on his practice, including that a female chaperone be present during examinations of all female patients. Doc. 48 at 33-38; *see id.* at 26-30.

Plaintiffs brought this action in January 2021. Doc. 1. According to Plaintiffs, upon discovering that Dr. Hawks was dating Sara Cooley – now Mrs. Hawks – Defendant embarked on a years-long campaign of harassment against the couple. *Id.* ¶¶ 7-8. Plaintiffs allege that Defendant posted hundreds of false and disparaging statements about Plaintiffs on social media platforms and online review boards, including from fake accounts in which she impersonated Mrs. Hawks; inundated Plaintiffs with threatening text messages, phone calls, and voicemails; reached out to Dr. Hawks' employers, patients, and church; and made a personal visit to Plaintiffs' home. *See id.* ¶¶ 9-73. In December 2017, Maryvale Justice Court issued an injunction against harassment, but Defendant ignored it and continued harassing Plaintiffs over the next two years. *Id.* ¶¶ 72, 83-84.

Plaintiffs claim that Defendant's conduct damaged their reputations and livelihood and caused them to suffer emotional distress. *See id.* ¶¶ 74, 80, 84, 91-92, 103, 111. Plaintiffs assert several state law tort claims: defamation, public disclosure of private facts, false light invasion of privacy, intrusion upon seclusion, and injurious falsehood. *Id.* ¶¶ 75-116. Plaintiffs seek an injunction against harassment and compensatory and punitive damages. *Id.* at 16. Defendant, proceeding pro se, filed an answer and a counterclaim asserting that Plaintiffs have engaged in abusive litigation against her in retaliation for her testimony before the Board. Doc. 15.

2

## II.     Summary Judgment Standard.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor, *Anderson*, 477 U.S. at 255.

## III.    Defendant's Motion.

Defendant moves to dismiss the complaint for lack of personal jurisdiction.  Doc. 48 at 1; *see* Fed. R. Civ. P. 12(b)(2).  The parties agree that Defendant's motion should be construed as a motion for summary judgment.  Doc. 49.

Defendant presently resides in Colorado, having moved there from Arizona in 2012.  Doc. 1 ¶ 2; Doc. 15 ¶¶ 1, 4.  Defendant contends that she did not cause events to occur in Arizona out of which this action arose and does not have the requisite minimum contacts with Arizona for personal jurisdiction.  Doc. 48 at 1-8.  Plaintiffs counter that Defendant consented to personal jurisdiction in her answer, that she has waived the defense by filing a counterclaim and participating in this litigation, and that the Court's exercise of personal jurisdiction is otherwise appropriate.  Doc. 55 at 8-17.  The Court finds that Defendant's actions subject her to personal jurisdiction in Arizona and need not address Plaintiffs' consent and waiver arguments.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  Arizona's long-

arm statute authorizes its courts to exercise personal jurisdiction to the maximum extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *see Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). Constitutional due process "requires that a defendant be haled into court in a forum State based on [her] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [she] makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286. Courts in the District of Arizona therefore may exercise personal jurisdiction over a defendant who is not physically present in Arizona if the defendant "has at least 'minimum contacts with the forum and subjecting the defendant to an action in that forum would 'not offend traditional notions of fair play and substantial justice.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs argue that Defendant is subject to specific personal jurisdiction. Doc. 55 at 11. Specific jurisdiction exists where the defendant's contacts with the forum give rise or relate to the cause of action before the court. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Stated differently, specific jurisdiction "depends on an 'affiliation between the forum and the underlying controversy, *i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden*, 571 U.S. at 284 n.6 (cleaned up).[1]

The Ninth Circuit employs a three-prong test to determine whether the defendant has sufficient minimum contacts with the forum state for specific jurisdiction:

> (1) the defendant must either purposefully direct [her] activities toward the forum or purposefully avail [herself] of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

---

[1] Specific jurisdiction differs from "general jurisdiction," which "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." *Id.* Plaintiffs do not contend that general jurisdiction exists. *See* Doc. 55 at 11-17.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up). Plaintiffs bear the burden of satisfying the first two prongs by a preponderance of the evidence. *See id.*; *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 & n.1 (9th Cir. 1986). If Plaintiffs carry that burden, Defendant must present a "compelling case" that the exercise of jurisdiction would be unreasonable. *See Axiom Foods*, 874 F.3d at 1068-69; *Ayla*, 11 F.4th at 979.

### A.    Purposefully Directed Activities.

Where the complaint sounds in tort, like this case, the inquiry under the first prong is whether the defendant purposefully directed her activities toward the forum state. *See Axiom Foods*, 874 F.3d at 1069. This requirement is often referred to as the "effects test" and is satisfied when the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, (3) which causes harm that the defendant knows is likely to be suffered in the forum state. *See id.* at 1070; *Ayla*, 11 F.4th at 980; *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (holding that jurisdiction over the defendants on a libel claim was proper in California based on the "effects" of their Florida conduct where the story they published "concerned the California activities of a California resident" and "the brunt of the harm . . . was suffered in California").[2]

To be clear, the effects test does not automatically authorize specific jurisdiction based on a foreign act with foreseeable effects in the forum state. *See Axiom Foods*, 874 F.3d at 1070. Nor does the effects test mean that specific jurisdiction may be based solely on the defendant's knowledge that the object of her tortious activity resides in a particular state. *See id.* at 1069-70. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [her] to the forum in a meaningful way." *Walden*, 571 U.S. at 290. The focus must always be on the "relationship among the defendant, the forum, and the litigation." *Id.* at 291 (quoting *Calder*, 465 U.S. at 788).

---

[2] Defendant does not address the effects test. *See* Doc. 48 at 7.

### 1.      Intentional Act.

Plaintiffs must first show that Defendant committed an "intentional act." An "intentional act" has a specialized meaning in the context of the effects test. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004). The word "act" denotes "an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate and intended." *Id.* (citation omitted). "Intent" refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id.*; *see Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ("The meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the intent to perform an actual, physical act in the real world.").[3]

In this case, there is no genuine dispute that Defendant acted intentionally when she engaged in the alleged harassing conduct and posted the statements that form the basis of Plaintiffs' claims. *See* Docs. 48 at 2, 55 at 12; *Schwarzenegger*, 374 F.3d at 806 (noting that the intentional acts committed in *Calder* "were the researching, writing, editing, and publishing of an allegedly libelous tabloid news article").

### 2.      Expressly Aimed at the Forum State.

To decide whether an intentional act is expressly aimed at the forum state, courts consider whether the relationship between the defendant and the forum state arose out of contacts the defendant herself created, and whether the defendant's contacts are with the state itself, rather than only with persons who happen to reside there. *See Morrill*, 873 F.3d at 1143 (citing *Walden*, 571 U.S. at 284). Because a plaintiff cannot be the only link between the defendant and the forum, a defendant's awareness that the plaintiff resides in the forum is not enough to show express aiming. *Ayla*, 11 F.4th at 980 (citing *Walden*, 571 U.S. at 285). "Something more – conduct directly targeting the forum – is required." *Id.*

---

[3] The result of the intentional act is relevant to the third element of the effects test, harm in the forum state. *See id.*

(cleaned up).  Plaintiffs have presented evidence of the "something more" required for express aiming.[4]

This is not a case where Defendant's sole connection to Arizona is the fact that Plaintiffs live here.  Defendant previously resided in Arizona and was a patient of Dr. Hawks for at least three years before she moved to Colorado.  Docs. 1 ¶ 8, 15 ¶ 6; Doc. 55-1 ¶ 2.  On December 26, 2017, Defendant visited Plaintiffs' Arizona residence to personally deliver a "love card" to Dr. Hawks.  Doc. 55-1 ¶ 8; Doc. 55-2 at 11, 19-27.  "[P]hysical entry into the State . . . is certainly a relevant contact."  *Walden*, 571 U.S. at 285 (citations omitted).  The fact that Defendant has visited the State since moving away shows that she has "[her] own affiliation with the State [that is] not based on . . . 'random, fortuitous, or attenuated' contacts" by Defendants.  *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Plaintiffs' claims and undisputed evidence clearly show that Defendant expressly aimed her activities at Arizona.  "The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."  *Schwarzenegger*, 374 F.3d at 807.  In *Walden*, the Supreme Court provided this explanation of the libel claim asserted in *Calder* and the effects test:

> The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff.  The strength of that connection was largely a function of the nature of the libel tort. . . .  [T]he reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens.  Indeed, because publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred in California.  In this way, the 'effects' caused by the defendants' article – *i.e.*, the injury to the plaintiff's reputation in the estimation of the California public –

---

[4] Plaintiffs filed a separate statement of facts in support of their response to Defendant's motion as required by Local Rule of Civil Procedure 56.1(b).  Doc. 55-1.  The statement cites to the declarations of Plaintiffs and other evidence showing that Defendant expressly aimed her tortious activities at Arizona.  Doc. 55-2.  Despite being advised of her obligations on summary judgment, *see Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), Defendant filed no statement of facts in support of her motion.  *See* LRCiv 56.1(a).

connected the defendants' conduct to California, not just to a plaintiff who lived there.

571 U.S. at 287-88; *see also Schwarzenegger*, 374 F.3d at 807 ("The reporter and editor in *Calder* were not accused of 'untargeted negligence' that merely happened to cause harm to Jones. Rather, their actions in writing and publishing a false and injurious article about Jones's alleged drinking problem constituted intentional behavior directed at Jones in California.").

Like the libel claim in *Calder*, publication of Defendant's derogatory statements about Plaintiffs is a necessary element of their claims for defamation, public disclosure of private facts, false light invasion of privacy, and injurious falsehood. *See* Doc. 1 ¶¶ 82, 87-88, 94-96, 105-07; Doc. 35 at 6-7. Plaintiffs present evidence that the statements Defendant published were aimed at Arizona where Plaintiffs live and work, concerned Plaintiffs' activities in Arizona, and were read by Arizona citizens resulting in harm to Plaintiffs' reputations and livelihood in Arizona. Doc. 55-1 ¶¶ 1, 3-5, 9-16, 19-21, 25; Doc. 55-2 at 3-14.

Defendant published the statements under various names and profiles on Google+, Google Reviews, Facebook, Yelp, Youtube, LinkedIn, and a host of other websites accessible to users in Arizona. Doc. 55-1 ¶¶ 1, 3-5; *see* Docs. 52 at 1-2, 55-2 at 116-23. The publications include a review of Dr. Hawks and Honor Health stating that Dr. Hawks is a rapist and Honor Health fired him for raping patients. Doc. 55-1 ¶ 11; Doc. 55-2 at 38, 96. Defendant stated in another review that Dr. Hawks "like[s] to prey on women" and "[a]ll he worries about is having happy endings[.]" Docs. 55-1 ¶ 14, 55-2 at 28. Defendant specifically targeted the new medical practice Dr. Hawks opened in Arizona, "Man Uplifted," calling it a "scam" and a "joke." Doc. 55-2 at 32-33. When Dr. Hawks' Arizona church publicly recognized him for missionary service on the church's website, Defendant posted a comment stating that he had cheated on his wife and was engaged to Sara Cooley who has many aliases because "creditors are looking for her." Doc. 55-1 ¶ 16; Doc. 55-2 at 81. In other publications, Defendant called Mrs. Hawks a "slut" and a "coke whore,"

and stated that she slept with Dr. Hawks "to get a house" and will sleep with him until his "money is all gone."  Doc. 55-1 ¶¶ 9, 11, 13, 19; Doc. 55-2 at 16-18, 48, 50, 54, 56, 58, 60-71, 77, 84, 92.  The reputation-based effects of the published statements connect Defendant's conduct to Arizona, not just to Plaintiffs.  *See* Doc. 52-2 at 3-14; *Walden*, 571 U.S. at 287-88 (noting that reputation "is the estimation in which one's character is held by his neighbors or associates") (citation omitted).

Regarding Plaintiffs' claim for intrusion upon seclusion (Doc. 1 ¶¶ 99-103), Defendant threatened Dr. Hawks and his family in an online message stating: "We know where you live and work."  Doc. 55-1 ¶ 13; Doc. 55-2 at 29, 36.  In the same message thread, Defendant made disparaging remarks about Dr. Hawks' children "in their new suburban neighborhood" in Arizona.  Docs. 55-1 ¶ 12, 55-2 at 134.  Defendant also made calls and sent text messages to Plaintiffs' Arizona phone numbers.  Doc. 55-2 at 5, 11.

What is more, an injunction against harassment issued by an Arizona court was served on Defendant in January 2018, but she ignored the injunction and continued to harass Plaintiffs in Arizona.  *Id.*

In short, Defendant established minimum contacts with Arizona beyond the mere fact that Plaintiffs happen to reside here.  *See Calder*, 465 U.S. at 789-90 ("[Petitioners prepared] an article that they knew would have a potentially devastating impact upon respondent.  And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which [the article would be read].  Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article."); *Russell v. Samec*, No. 2:20-cv-00263-RSM-JRC, 2020 WL 7048403, at *5 (W.D. Wash. Oct. 8, 2020) ("Here, plaintiff has provided an uncontroverted affidavit that defendant Bishop posted comments on social media that were allegedly defamatory, that included references to plaintiff living in and doing business in Washington, and that identified plaintiff's Washington businesses by name. . . .  These allegations go well beyond . . . incidental, ancillary conduct in the forum state[.]  Bishop did not simply target plaintiff knowing that he was a Washington resident

9

and that harm in Washington was likely to occur. . . .  Like the defendant in *Calder*, Bishop
. . . took actions with a focal point in the forum state.").[5]

### 3. Causing Harm in the Forum State.

The third element of the effects test is whether the defendant caused harm that she
knew would likely be suffered in the forum state.  *See Ayla*, 11 F.4th at 980.  This element
is satisfied.

When she engaged in the alleged tortious conduct, Defendant knew that Arizona is
where Plaintiffs live and where Dr. Hawks has his medical practice.  *See* Doc. 1 ¶¶ 1, 8;
Doc. 15 ¶¶ 1, 6; Doc. 55-1 ¶¶ 21, 25.  She therefore knew that any harm caused by the
conduct would be suffered in Arizona.  *See Biliack v. Paul Revere Life Ins. Co.*, 265 F.
Supp. 3d 1003, 1009 (D. Ariz. 2017) (finding this element satisfied where the defendant
knew the plaintiff resided in Arizona).

Because each element of the effects test has been established, the Court finds that
Defendant purposefully directed her activities at Arizona.

### B. Arising Out of Forum-Related Activities.

For specific jurisdiction to exist, Plaintiffs' claims must also arise out of
Defendant's forum-related activities.  *See Ayla*, 11 F.4th at 980.  The Ninth Circuit
"measure[s] this requirement in terms of 'but for' causation."  *Bancroft & Masters, Inc. v.
Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).  The requirement is easily satisfied
in this case.

But for Defendant's forum-related activities – her alleged harassment and
defamatory statements – Plaintiffs' claims would not have arisen.  *See* Doc. 55 at 14;
*Bancroft & Masters*, 223 F.3d at 1088; *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th
Cir. 2002) ("It is obvious that Dole's claims against Watts and Boenneken arise directly
out of their contacts with the forum.  As recounted above, the contacts between Watts and

---

[5] Contrary to Defendant's assertions, she did not merely publish a blog, and her
online posts were not simply artistic expressions of poetry that did not target Arizona.
Doc. 48 at 2, 8.

Boenneken and the forum state are integral and essential parts of the alleged fraudulent scheme on which Dole bases its suit."); *Russell*, 2020 WL 7048403, at *6 (finding that the plaintiff's claims arose out of forum-related conduct where he asserted that "'but-for' the alleged campaign of promulgating false statements about him, he would not have suffered emotional distress and anguish").

### C. Reasonableness of Jurisdiction.

Once the first two prongs of the specific jurisdiction test are met, there is a strong presumption of reasonableness. *See Dole Food*, 303 F.3d at 1117. The burden shifts to Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1114 (quoting *Burger King*, 471 U.S. at 477). Defendant has failed to meet this heavy burden.

Reasonableness looks to: (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See id.*

The first factor – the extent of Defendant's purposeful interjection into Arizona – weighs in favor of Plaintiffs. The Court has found that Defendant aimed her activities at Arizona to a degree sufficient to satisfy the purposeful direction requirement. "There may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful [direction] yet still weighs against the reasonableness of jurisdiction, but this is not such a case." *Dole Food*, 303 F.3d at 1114-15. Plaintiffs have presented substantial evidence that Defendant engaged in a years-long campaign of harassment against them and published numerous defamatory and offensive statements aimed at Arizona. Doc. 55-1 ¶¶ 3-16; *see Dole Food*, 303 F.3d at 1115 (finding the defendants' interjection into California to be significant where they knew their fraudulent scheme would injure the plaintiff in the forum and had communications with the plaintiff in

furtherance of the scheme); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (finding that this factor weighed in the plaintiff's favor where defendant knew his actions would likely injure the plaintiff in the forum and communicated with plaintiff in the forum).

The second factor – the burden on Defendant – weighs in Defendant's favor. It undoubtedly would be more burdensome for Defendant to litigate this case in Arizona where she no longer resides. *See Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007).

The third factor – conflict with Colorado sovereignty – favors Plaintiffs. Defendant identifies no conflict between the exercise of jurisdiction in Arizona and the sovereignty of Colorado.

The fourth factor – Arizona's interest in adjudicating the dispute – favors Plaintiffs. Arizona has a strong interest in providing a forum for tortiously injured residents. *See id.*

The fifth factor – the most efficient judicial resolution – favors Plaintiffs. Courts generally consider where the witnesses and the evidence are located. *See id.* at 1060-61. Because witnesses and evidence are located in both Arizona and Colorado, neither forum has a clear efficiency advantage. *See id.* at 1061. But the parties have litigated this case in Arizona for more than a year and half and would need to start over in Colorado if the case were to be dismissed at the summary judgment stage. *See* Doc. 55 at 16.

The sixth factor – Plaintiffs' convenience – weighs in favor of Plaintiffs. Litigating in Colorado would surely be inconvenient for Arizona residents.

The final factor – the existence of an alternative forum – favors Defendant. Plaintiffs do not dispute that Colorado is an alternative forum. See Doc. 55 at 16-17.

The first, third, fourth, fifth, and sixth factors favor Plaintiffs, while the second and seventh factors favor Defendant. Because the factors clearly favor Plaintiffs, Defendant has failed to overcome the strong presumption of reasonableness. *See Dole Food*, 303 F.3d at 1117. The Court accordingly will deny Defendant's motion. Doc. 48.[6]

---

[6] Defendant filed a reply brief that addresses the merits of Plaintiffs' claims instead of jurisdiction. Doc. 59. The Court will construe the brief as a response to Plaintiffs'

1    **IV.    Plaintiffs' Motion.**

2          Plaintiffs move for summary judgment on the issue of liability on their claims for

3    defamation, false light invasion of privacy, intrusion upon seclusion, and injurious

4    falsehood (counts one, three, four and five).  Doc. 57 at 1, 7-12.  Plaintiffs also seek

5    summary judgment on their requests for an injunction against harassment (count six) and

6    economic damages.  *Id.* at 1-2, 12-15.[7]

7          Pursuant to Local Rule of Civil Procedure 56.1(a), Plaintiffs filed a statement of

8    facts and supporting evidence.  Doc. 58.  Defendant filed a controverting statement that

9    purports to dispute each fact asserted by Plaintiffs (Doc. 60 at 1-6), but Defendant does not

10   identify the specific portions of the record supporting her position that a fact is disputed as

11   required by Local Rule  56.1(b).  *See also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that

12   a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts

13   of materials in the record.").  Defendant does, however, offer several supplemental facts in

14   support of her response to Plaintiffs' motion.  Doc. 60 at 6-7.

15         The Court will deem Plaintiffs' facts undisputed if they have evidentiary support

16   and do not materially conflict with Defendant's supplemental facts or other evidence on

17   record.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's

18   assertion of fact as required by Rule 56(c), the court may . . . consider the fact

19   undisputed[.]"); *Cantu v. Lantis Enters., Inc.*, No. CV 20-90-BLG-TJC, 2023 WL

20   2561163, at *5 (D. Mont. Mar. 17, 2023) ("A party opposing summary judgment cannot

21   manufacture a contested fact by relying on unsupported, conclusory and argumentative

22   statements.  Here, Cantu does not cite any evidence, such as an affidavit or discovery, to

23   oppose any fact presented by Defendants.  As such, the facts remain undisputed."); *Pac.*

24   *Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 900 (9th Cir. 2021)

25

26   motion for partial summary judgment on the merits.  *See* Doc. 61 at 2.

27          [7] Plaintiffs do not move for summary judgment on their claim for public disclosure
     of private facts (count two), their requests for emotional distress and punitive damages, or
28   Defendant's counterclaim for retaliation.

(deeming a fact undisputed where the party "point[ed] to no specific evidence disputing the fact").

### A. Defamation.

To prove defamation under Arizona law, a plaintiff must show that the defendant knowingly, recklessly, or negligently published a defamatory statement of fact about the plaintiff.  *See Arimilli v. Rezendes*, No. CV-21-00345-PHX-GMS, 2023 WL 2734456, at *5 (D. Ariz. Mar. 31, 2023) (citing *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977)); Revised Arizona Jury Instructions ("RAJI") (CIVIL) 7th Defamation 1A-B.  "To be defamatory, the statement 'must be false and must bring the [plaintiff] into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation.'" *Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, 2022 WL 704121, at *8 (D. Ariz. Mar. 9, 2022) (quoting *Turner v. Devlin*, 848 P.2d 286, 288-89 (Ariz. 1993)); *see* RAJI (CIVIL) 7th Defamation 2.

A court decides, in the first instance, whether a statement is capable of bearing a defamatory meaning, and the jury then decides whether the defamatory meaning of the statement was in fact conveyed.  *See Yetman v. English*, 811 P.2d 323, 331 (Ariz. 1991).  "But, in some cases imputations are so clearly innocent or so clearly defamatory that the court is justified in determining the question itself." *Id.*; *see Rogers v. Mroz*, 502 P.3d 986, 990 (Ariz. 2022) (explaining that it is for the jury to determine the meaning and construction of alleged defamatory language "[u]nless this is free from reasonable doubt").

A plaintiff generally must show that the statement caused damages, but damages are presumed when the statement is defamatory per se.  *See Peagler*, 560 P.2d at 1222; *Hobbs v. Oppenheimer*, No. CV-22-00290-TUC-JCH, 2022 WL 16855194, at *3 (D. Ariz. Nov. 10, 2022); RAJI (CIVIL) 7th Defamation 8.  A statement is defamatory per se "when its publication charges a contagious or venereal disease, or charges that a woman is not chaste, or tends to injure a person in his profession, trade or business, or imputes the commission of a crime involving moral turpitude." *de Jesus v. Dignity Health Corp.*, No. CV-21-00926-PHX-DWL, 2023 WL 244489, at *11 n.12 (D. Ariz. Jan. 18, 2023) (quoting *Modla*

*v. Parker*, 495 P.2d 494, 496 n.1 (Ariz. Ct. App. 1972)); *see also McKnight v. McKnight*, No. CV-20-01956-PHX-DWL, 2021 WL 4133970, at *4 (D. Ariz. Sept. 10, 2021) ("[A] statement is defamatory per se when the defamatory character of the statement is apparent on its face; that is, when the words used are 'of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed.'") (quoting *McClinton v. Rice*, 265 P.2d 425, 429-30 (Ariz. 1953)).

Defendant falsely stated in numerous online posts that Mrs. Hawks is a "coke whore" and "slut" who works "on her knees" for a living. Doc. 55 ¶¶ 2, 9, 25-26; *see id.* at 18, 30, 32, 34, 37-43, 50, 97, 117, 132, 135, 176-77, 190, 192.  These statements are defamatory per se.  *See McKnight*, 2021 WL 4133970, at *4; *de Jesus*, 2023 WL 244489, at *11 n.12; *see also Tipping v. Martin*, No. 3:15-CV-2951-BN, 2016 WL 397088, at *4 (N.D. Tex. Feb. 2, 2016) (noting that the common meaning of the words "whore" and "slut" impute unchastity and the crime of prostitution in some circumstances); *Mallory v. S & S Publishers*, 168 F. Supp. 3d 760, 775-76 (E.D. Pa. 2016) (discussing cases where the plaintiff stated a defamation per se claim by alleging that the defendant called her a "whore" and "slut"); *Walia v. Vivek Purmasir & Assocs.*, 160 F.Supp.2d 380, 394-95 (E.D.N.Y. 2000) (statements that the plaintiff was a "whore" and "slut" constitute defamation per se as they impute unchastity to the plaintiff); *Narcisse v. Turner Indus. Grp., LLC*, No. CIV.A. 11-2659, 2012 WL 1565293, at *6 (E.D. La. Apr. 30, 2012) ("Criminal accusations, here use of cocaine, are defamatory per se[.]").

Defendant also falsely stated on the website of Dr. Hawks' church that Mrs. Hawks "has many other [a]lias names due to the fact that creditors are looking for her."  Doc. 58 ¶¶ 9, 25-26; *id.* at 18, 184.  Defendant stated in another online post that Mrs. Hawks "goes by many different names trying to keep debt collectors from finding her[.]" *Id.* at 41.  These statements are defamatory because they imply Mrs. Hawks intentionally defrauded her creditors.  *See Campbell v. Triad Fin. Corp.*, No. 5:07-CV-579, 2007 WL 2973598, at *22 (N.D. Ohio Oct. 9, 2007) ("Defrauding creditors can be a felony supporting a claim of defamation per se.");  *LoanStreet, Inc. v. Troia*, No. 21 CIV. 6166 (NRB), 2022 WL

15

3544170, at *7 (S.D.N.Y. Aug. 17, 2022) (statements "which either expressly or impliedly state that plaintiffs 'defrauded' and 'cheated' defendant, constitute defamation per se"); *see also Rogers*, 502 P.3d at 990 ("[A] statement is actionable if it implies a clearly defamatory meaning.   This is called defamation by implication.") (citation omitted); *Wray v. Greenburg*, No. CV-22-00859-PHX-DWL, 2022 WL 17741064, at *19 (D. Ariz. Dec. 16, 2022) ("Defamation by implication, which is recognized in Arizona, acknowledges that a statement may be actionable if it 'implies a clearly defamatory meaning.'") (citation omitted).

Defendant falsely stated in an online review of Dr. Hawks that he is a "rapist." Doc. 58 ¶ 30; *see id.* at 137, 178.  Defendant falsely implied in another online post that Dr. Hawks has a venereal disease, urging women who had sex with him "to go and be checked [because] he has been with many women."  *Id.* ¶ 27, at 178.  These statements are defamatory per se.  *See Deyo v. Eck*, No. CV 23-1658, 2023 WL 3821818, at *15 (E.D. Pa. June 5, 2023) (a statement that "imputes a criminal offense, loathsome disease, . . . or serious sexual misconduct constitutes defamation per se") (cleaned up); *Malott v. Goodlett*, No. 3:17-CV-00578-CHB-RSE, 2020 WL 12968413, at *4 (W.D. Ky. Dec. 30, 2020) ("Statements classified as defamatory per se include those which attribute to someone a criminal offense, a loathsome disease, [or] serious sexual misconduct") (citation omitted); *Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199, at *17 (N.D. Cal. Jan. 6, 2020) (finding an online statement accusing the plaintiff of being a rapist to be defamatory per se); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) ("Rape is a sufficiently 'serious' crime to support a claim for defamation per se.");  *Ismail v. Montchak*, No. B284163, 2019 WL 2949863, at *4 (Cal. Ct. App. July 8, 2019) ("Accusing someone of rape is defamatory per se because rape is a serious and shocking felony."); *Hansen v. Stoll*, 130 Ariz. 454, 457, 636 P.2d 1236, 1239 (Ariz. Ct. App. 1981) (statements of crimes involving moral turpitude are defamatory per se).[8]

---

[8] Defendant's statements that Dr. Hawks has no ethical or moral values (Doc. 58 at 138, 178, 191) do not constitute actionable defamation because they are subjective opinions

Plaintiffs have presented evidence showing the falsity of the statements recited above.  *See* Doc. 58 ¶¶ 26-27; *id.* at 13, 18.  To establish their defamation claim, however, Plaintiffs must also show Defendant's fault – that she actually knew the statements were false or acted in reckless or negligent disregard of the truth.  *See Peagler*, 560 P.2d at 1222; *Arimilli*, 2023 WL 2734456, at *5; RAJI (CIVIL) 7th Defamation 1A-B, 4A-B.  Plaintiffs present no evidence in this regard.

Plaintiffs assert that Defendant "acted maliciously or recklessly in failing to ascertain the truth or falsity of her statements about Mrs. Hawks" (Doc. 57 at 8 ), but the evidence cited in support concerns falsity – Mrs. Hawks's testimony that she is not a prostitute and does not use cocaine.  *See* Doc. 58 ¶ 26 (citing *id.* at 18 ¶ 7).  Plaintiffs cite no other evidence establishing Defendant's fault for the defamatory statements.  *See* Docs. 57 at 7-9, 61 at 3-4; *see also* Fed. R. Civ. P. 56(c)(1)(A) (a party asserting that a fact is undisputed "must support the assertion by . . . citing to particular parts of materials in the record").

Defendant specifically argues that Plaintiffs have failed to prove liability by showing that she acted with actual knowledge of falsity, with reckless disregard for the truth, or negligently in failing to learn the truth.  Doc. 59 at 5 (citing *Peagler*, 560 P.2d at 1222).  Plaintiffs respond by noting that Defendant has presented no evidence that she exercised diligence regarding the truth or falsity of the defamatory statements.  Doc. 61 at 3.  But Plaintiffs bear the burden of proof on this issue.  They must show by a preponderance of the evidence that Defendant did not exercise reasonable diligence and negligently, recklessly, or knowingly made the defamatory statements.  *Bobolas v. Does 1-100*, No. CV-10-2056-PHX-DGC, 2010 WL 3923880, at *3-4 (D. Ariz. Oct. 1, 2010) (denying relief on defamation claim where the plaintiff presented no evidence showing

---

that cannot be proven true or false using objective criteria.  *See Turner*, 848 P.2d at 291-92; RAJI (CIVIL) 7th Defamation 4C; *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, No. CV 21-869-RGA, 2022 WL 608924, at *5 (D. Del. Feb. 23, 2022) (statement that the plaintiff "lacks moral principles and character" was a non-actionable opinion); *Johnson v. Lindsay Pope Brayfield & Assocs., Inc.*, 875 S.E.2d 856, 862 (Ga. Ct. App. 2022) (statement that the plaintiffs had "no morals" was a matter of opinion).

negligence and did not otherwise address what efforts the defendants may have made to discover truth or falsity); *see Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994) (explaining that a private figure must prove by a preponderance of the evidence that the defendant negligently published false statements to recover on a defamation claim under Arizona law) (citations omitted).  Fault is an essential element of a defamation claim given the First Amendment's protection of free speech, and even statements that are defamatory per se are not actionable without proof of fault.  *Bobolas*, 2010 WL 3923880, at *5 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) ("We hold that, *so long as they do not impose liability without fault*, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.")); *see Peagler*, 560 P.2d at 1220 (*Gertz* "placed certain limitations on state actions: first, that there could be no recovery without fault"); *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 180 (Ariz. Ct. App. 1985) ("Fault is the third element of liability.  Such fault may consist of knowledge of falsity, reckless disregard of truth or falsity, or negligence."); *Wray*, 2022 WL 17741064, at *19 (to establish liability for defamation of a private figure there must be "fault amounting at least to negligence on the part of the publisher").

"[A] plaintiff moving for summary judgment bears the burden of setting forth evidence establishing beyond controversy the elements of his claims."  *Stetter v. Blackpool, LLC*, No. CV-09-1071-PHX-DGC, 2011 WL 4089444, at *1 (D. Ariz. Sept. 14, 2011) (cleaned up).  Because Plaintiffs have failed to establish Defendant's fault, the Court will deny summary judgment with respect to liability on their defamation claim.  The Court will, however, grant Plaintiffs' motion to the extent they argue that the statements recited above are defamatory.  *See* Fed. R. Civ. P. 56(g).

### B.   False Light Invasion of Privacy.

To establish their false light claim, Plaintiffs must prove that Defendant "knowingly or recklessly published false information or innuendo about [Plaintiffs] that a reasonable person would find highly offensive."  *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 854 (Ariz.

18

Ct. App. 1997)); *see Godbehere*, 783 P.2d at 784 (citing Restatement (Second) of Torts § 652E); *Wray*, 2022 WL 17741064, at *21 (same). "A statement which creates a false impression about a person is 'highly offensive' if a reasonable person in the same or similar circumstances would feel seriously upset or embarrassed by the statement." RAJI (CIVIL) 7th Invasion of Privacy 11 (citing Restatement § 652E cmt. c); *see also Godbehere*, 783 P.2d at 786 (explaining that while "the plaintiff's subjective threshold of sensibility is not the measure, and 'trivial indignities' are not actionable[,]" the plaintiff need not show "outrageous" conduct to prevail on a false light claim); *Shupe v. JPMorgan Chase Bank of Ariz.*, No. CV 11-501-TUC-RCC, 2012 WL 1344786, at *3 (D. Ariz. Apr. 18, 2012) ("In *Godbehere*, the Arizona Supreme Court held extreme and outrageous conduct is not an element of the tort of false light invasion of privacy and adopted the Restatement's definition of the claim.").

Plaintiffs contend that any reasonable person would find highly offensive the statements about Mrs. Hawks being a "coke whore" and a "slut" who works "on her knees," and the statements about Dr. Hawks being a "rapist" and having a venereal disease. Docs. 57 at 9, 61 at 4. The Court agrees and will grant summary judgment on this limited point. *See* Fed. R. Civ. P. 56(g).

But like defamation, fault is an essential element of a false light claim. A "plaintiff must show the defendant, *with knowledge of falsity or reckless disregard for the truth*, gave publicity to information placing the plaintiff in a false light[.]" *Longoria v. Kodiak Concepts LLC*, 527 F. Supp. 3d 1085, 1103 (D. Ariz. 2021) (quoting *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015)); *see Godbehere*, 783 P.2d at 786 ("The standards for proving false light invasion of privacy are quite 'stringent' by themselves. For example, the plaintiff in a false light case must prove that the defendant published with knowledge of the falsity or reckless disregard for the truth.") (citing Restatement § 652E); *Davis v. Voorhees*, No. CV-21-08249-PCT-DLR, 2022 WL 2718122, at *4 (D. Ariz. July 13, 2022) ("The defendant is liable [for false light only] if . . . the defendant had knowledge of or acted in reckless disregard as to the falsity of the

publicized matter.") (citing *Godbehere*, 783 P.2d at 784).  Plaintiffs assert that Defendant either knowingly or recklessly published the offensive statements about them (Doc. 57 at 9), but they again present no evidence in support of this assertion.  The Court therefore will deny summary judgment with respect to Defendant's liability on the false light claim.[9]

## C. Injurious Falsehood.

A claim for injurious falsehood requires: (1) publication of a false statement harmful to another's interests, (2) intent or knowledge that the publication will result in harm, (3) knowledge that the statement is false or in reckless disregard of the truth, and (4) resulting pecuniary loss.  *See W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 739 P.2d 1318, 1321 (Ariz. Ct. App. 1986) (citing Restatement § 623A); *see also Seitz v. Rheem Mfg. Co.*, 544 F. Supp. 2d 901, 909 (D. Ariz. 2008) (explaining that "[t]he theories of injurious falsehood and defamation tend to overlap 'particularly in cases of disparagement of the plaintiff's business or product'") (quoting Restatement § 623A, cmt. g).

Plaintiffs have shown that Defendant published false statements regarding Dr. Hawks' medical practice with the intent to deter others from visiting or doing business with him.  Doc. 57 at 11 (citing Doc. 58 ¶ 30).  Plaintiffs contend that the statements far exceed the requisite level of intent and harm, thus constituting a claim for injurious falsehood.  *Id.* But Plaintiffs present no argument or evidence that Defendant knew the statements were false or acted in reckless disregard of the truth.  *See id.*; Doc. 61 at 6-7.  The Court will deny Plaintiffs' request for summary judgment on their injurious falsehood claim.  *See Aldabbagh v. Ariz. Dep't of Liquor Licenses & Control*, 783 P.2d 1207, 1213 (Ariz. Ct.

---

[9] Plaintiffs have also presented no argument or evidence that Defendant acted negligently as to whether the offensive statements would create a false impression about them.  *See* RAJI (CIVIL) 7th Invasion of Privacy 9B (negligence instruction where the plaintiff is not a public figure); *Godbehere*, 343, 783 P.2d at 789 n.6 ("To this point, we have spoken of false light as requiring that the plaintiff show actual malice. . . .  Because this case does not present the issue, we . . . take no position on the validity of a false light action for negligent publication."); *Meador v. New Times*, Inc., 36 F.3d 1103 (9th Cir. 1994) ("Although Arizona law is clear that a public figure who brings a false light invasion of privacy claim must show actual malice to recover compensatory damages, the Arizona courts have not yet determined whether a private figure must also show actual malice, or merely negligence.") (citing *Godbehere*, 783 P.2d at 879 n.6).

App. 1989) (dismissing injurious falsehood claim where the plaintiff identified no facts showing that the defendant knew the alleged harmful statements were false).

### D.     Intrusion upon Seclusion.

A claim for intrusion upon seclusion requires a plaintiff "to prove two elements: (i) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns[,] and (ii) that the intrusion would be highly offensive to a reasonable person." *Davis v. HDR Inc.*, 606 F. Supp. 3d 898, 910 (D. Ariz. 2022) (citing *Hart*, 947 P.2d 846).  To satisfy the first element, a plaintiff must show an "actual, subjective expectation of seclusion or solitude in the place, conversation, or matter, and . . . that the expectation was objectively reasonable." *Dible v. City of Chandler*, No. CV 03-00249-PHX-JAT, 2005 WL 8162952, at *8 (D. Ariz. Jan. 10, 2005) (citing *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812-13 (9th Cir. 2002) (applying Arizona law)).  The second element – a highly offensive intrusion – generally requires "an exceptional kind of prying into another's private affairs." *Med. Lab'y*, 306 F.3d at 819 (citing Restatement § 652B, cmt. b).  Relevant factors include "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.*

Plaintiffs contend that they have provided ample evidence that Defendant intentionally intruded upon their seclusion and private affairs through her repeated emails, phone calls, and internet smear campaign.  Docs. 57 at 10, 61 at 6.  Plaintiffs took multiple steps to prevent Defendant's intrusion, including blocking her phone number and online accounts and obtaining an injunction against harassment.  Docs.  57 at 10, 58 ¶ 29.  Those efforts proved futile.  On December 26, 2017, Defendant made an uninvited visit to Plaintiffs' private residence in Litchfield Park, Arizona and deposited a love card in their mailbox.  Doc. 58 ¶ 22; *see id.* at 13, 17, 121-29.  Plaintiffs maintain the privacy of the mailbox, which is located near the front door of the house, and reasonably expect only the Postal Service and other registered carriers to deposit mail in it.  *Id.* at 13 ¶ 7, 17 ¶ 4.

Plaintiffs argue that given the affirmative steps they took to protect their privacy and avoid Defendant's obsessive behavior, her conduct was intentional, intrusive, and highly offensive. Doc. 57 at 10-11. The Court agrees.

Defendant's visit to Plaintiffs' home was not a random act or isolated incident. In September 2017, after discovering that Dr. Hawks was in a relationship with Sara Cooley (now Mrs. Hawks), Defendant posted online about her "tragic love story." Doc. 58 at 22-23. She stated that Sara Cooley was Dr. Hawks' "coke whore patient" and "soon to be wife" who has sex with her "doctor and got a house." *Id.*[10] Defendant published similar disparaging (and extremely vulgar) posts about Plaintiffs over the next few months, one of which included the hashtag "Litchfield Park," where Plaintiffs resided. *Id.* at 29. On Christmas Day 2017, Defendant created a social media post about Mrs. Hawks titled "Got your Number." *Id.* at 34. The post states, among other things, that Dr. Hawks had made disparaging remarks about Mrs. Hawks to Defendant, that Defendant and Dr. Hawks had continued their sexual relationship while he was dating Mrs. Hawks, and that Defendant hated Mrs. Hawks for stealing her "fairytale dream." *Id.* at 34. Defendant visited Plaintiffs' home and delivered the love card the next day. *Id.* at 17 ¶ 4.[11]

Defendant's obsession with Plaintiffs did not end there. She continued to publish disparaging remarks over the next several months. She even went so far as to create a fake LinkedIn profile for Mrs. Hawks and photo with the headline "Stay at home at Dr. [J]ack [H]awks." Doc. 58 ¶ 17, at 17 ¶ 5. She then published a post which stated: "Sleeping with him in the office led to the best thing. I never have to work again. Sorry @Sharon I won. I guess I was just better in bed." *Id.* at 101.

---

[10] Some of Defendant's statements were made using hashtags – the pound or number symbol (#) followed by continuous text with no spacing or punctuation. *See e.g.*, *id.* at 22 ("#saraadycooleydrjackjessenhawkscokewhorepatientsoontobewife"). For clarity's sake, the Court will set forth such statements in sentence form.

[11] Dr. Hawks is the addressee on the envelope. *Id.* at 126. The card states: "LOVE YOU MORE – MORE THAN YESTERDAY. MORE THAN ANYTHING. MORE EVERY SINGLE DAY." *Id.* at 128-29. A handwritten note states: "I always will, more than she ever can!" *Id.* at 129.

Defendant also threatened Plaintiffs and their family.  She stated in one post: "Watch and observe your every move Jack Hawks and family the death threats are on [their] way.  We know where you live and work."  Doc. 58 ¶ 12; *see id.* at 56, 63, 182.

Given the context and circumstances surrounding Defendant's intrusive conduct, it clearly rises to "an exceptional prying into [Plaintiffs'] private affairs."  *Med. Lab'y*, 306 F.3d at 819.  The Court will grant Plaintiffs' motion for summary judgment with respect to Defendant's liability on the intrusion upon seclusion claim.

Defendant states that Plaintiffs "have failed to conduct due diligence and have not provided documentation to prove their claim."  Doc. 59 at 6.  Defendant is wrong.  Plaintiffs have presented photographs of the love card and Defendant on the front porch of their home when she delivered it.  Doc. 58 at 121-29.  Plaintiffs have also presented voluminous evidence of Defendant's other harassing conduct and defamatory statements, none of which Defendant genuinely disputes.  *See id.* at 12-198.

**E.**     **Injunction Against Harassment.**

Plaintiffs request that the Court issue an injunction against harassment pursuant to A.R.S. § 12-1809.  Doc. 57 at 12; *see* Doc. 1 ¶¶ 114-15.  But "this Court does not hear and issue state law injunctions against harassment[.]"  *Brown v. Brown*, No. CV 22-01848-PHX-DMF, 2023 WL 2877027, at *4 (D. Ariz. Mar. 20, 2023); *see* § 12-1809(A) (authorizing "a magistrate, justice of the peace or superior court judge" to issue an injunction against harassment).  This request is denied.

**F.**     **Damages.**

Plaintiffs seek an award of $250,000 in economic damages, claiming that Defendant's defamatory online reviews of Dr. Hawks caused his employer to terminate his employment contract in May 2020.  Doc. 57 at 14.  Because Plaintiffs have failed to establish Defendant's liability on the defamation and injurious falsehood claims, their summary judgment request for economic damages will be denied.  *See Turner Constr. Co. v. Rockley Ints., Inc.*, No. 4:18-CV-571, 2019 WL 13191626, at *2 & n.3 (S.D. Tex. Aug. 19, 2019) (denying motion for partial summary judgment on damages where the

plaintiff failed to provide evidentiary support for an element of its claim); *Mejia v. Big Lots Stores, Inc.*, No. SA-13-CA-504, 2014 WL 12495292, at *2 n.1 (W.D. Tex. Oct. 16, 2014) ("Because the Plaintiff has failed to establish Designco's liability under any theory of liability, her motion for summary judgment with respect to . . . damages must be denied.").[12]

**IT IS ORDERED:**

1.      Defendant's motion for summary judgment regarding personal jurisdiction (Doc. 48) is **denied**.

2.      Plaintiffs' motion for partial summary judgment (Doc. 57) is **granted in part** and **denied in part**.  The motion is granted with respect to (1) certain statements discussed above being defamatory and highly offensive as a matter of law, and (2) Defendant's liability for intrusion upon seclusion claim (count four).  The motion is denied in all other respects.

3.      The Court will hold a telephone conference on **September 13, 2023 at 1:30 p.m.** for the purpose of setting the pretrial conference and trial dates in this matter. The dial-in number for the conference is 866-390-1828, access code 5861608#.

Dated this 14th day of August, 2023.

David G. Campbell
Senior United States District Judge

---

[12] Plaintiffs do not move for an award of emotional distress damages on their claims for false light invasion of privacy and intrusion upon seclusion.  *See* Doc. 57 at 14-15.

24